**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HAYWOOD L. CHAVIS, JR., Plaintiff, v. UNITED STATES OF AMERICA, et al., Defendants. | Civil Action No. 14-2578(NLH) **OPINION** |

**APPEARANCES:**

Haywood L. Chavis, Jr.
F.C.I. Gilmer
P.O. Box 6000
Glenville, WV 26351
Plaintiff pro se

**HILLMAN**, District Judge

Plaintiff Haywood L. Chavis, Jr., a prisoner confined at the Federal Correctional Institution - Gilmer, in Glenville, West Virginia, seeks to bring this action in forma pauperis pursuant to pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), alleging violations of his constitutional rights while he was confined at the Federal

Correctional Institution at Fort Dix, New Jersey.[1]

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

## I. BACKGROUND

The following factual allegations are taken from Plaintiff’s Complaint, and attachments, and are accepted as true for purposes of this review. Plaintiff alleges that on May 18, 2013, when he was leaving the food service building where he worked, Correctional Officer A. Sassaman stopped him for a routine pat-down search. Plaintiff alleges that Defendant

[1] This matter previously was administratively terminated based on Plaintiff’s failure either to prepay the filing fee or to submit an application for leave to proceed in forma pauperis. Plaintiff has submitted a new and complete Application [4] for leave to proceed in forma pauperis. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff’s application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and will order the Clerk of the Court to re-open this matter and to file the Complaint.

Officer Sassaman conducted the pat-down search not in a routine manner, but instead in a "homosexual manner."[2] (Complaint, Allegations, ¶ 1.) According to Plaintiff, he objected and struck Officer Sassaman's hand away, terminating the search, which caused Officer Sassaman to file a disciplinary report. Plaintiff asserts that he was found guilty of assaulting an officer, which resulted in the imposition of disciplinary sanctions and a change in his custody level.[3] Plaintiff also asserts that he experienced an anxiety attack following the search and that he has required continuing treatment and medication for post-traumatic stress disorder.

Plaintiff contends that the manner in which the search was conducted violated his First Amendment right to free exercise of religion,[4] his Fourth Amendment right to be free from unreasonable searches, and his Eighth Amendment right to be free from cruel and unusual punishment. In addition to Officer Sassaman, Plaintiff names as Defendants the Bureau of Prisons

---

[2] More specifically, Plaintiff alleges that Officer Sassaman "did cup Plaintiff['s] groins with his fingers and palms manipulating plaintiff['s] penis. Without plaintiff['s] consent ... ." (Complaint, Allegations, ¶ 6.)

[3] The Court does not construe the Complaint as challenging the result of the disciplinary proceeding.

[4] Plaintiff asserts that he is a Seventh Day Adventist and that homosexuality is against his religious beliefs.

and the United States of America. Plaintiff contends that the Bureau of Prisons and the United States failed to properly train and supervise Officer Sassaman. Plaintiff seeks monetary damages and an injunction barring retaliation for bringing this action.

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ... . Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

That is, a complaint must assert "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged.” Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). The determination of whether the factual allegations plausibly give rise to an entitlement to relief is “‘a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.’” Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012) (citations omitted). Thus, a court is “not bound to accept as true a legal conclusion couched as a factual allegation,” and “[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.” Ashcroft v. Iqbal, 556 U.S. at 678 (citations omitted).

In determining the sufficiency of a pro se complaint, the Court must be mindful to accept its factual allegations as true, see James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012), and to construe it liberally in favor of the plaintiff, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)), cited in Thomaston v. Meyer, 519 F.App’x 118, 120 n.2 (3d Cir. 2013);

Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

III. Bivens v. Six Unknown Agents

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971), the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages. The Supreme Court has also implied damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14 (1980), and under the equal protection component of the Fifth Amendment's Due Process Clause, see Davis v. Passman, 442 U.S. 228 (1979).

But "the absence of statutory relief for a constitutional violation does not necessarily mean that courts should create a damages remedy against the officer responsible for the violation." Schreiber v. Mastrogiovanni, 214 F.3d 148, 152 (3d Cir. 2000) (citing Schweiker v. Chilicky, 487 U.S. 412 (1988)). Thus, since Carlson, the Supreme Court "has consistently refused to extend Bivens liability to any new context or new category of defendants." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 68 (2001).

The Supreme Court has never extended Bivens to claims sounding in the First Amendment. See, e.g., Reichle v. Howards,

132 S.Ct. 2088, 2093 n.4 (2012) (noting that the Supreme Court has never held that Bivens extends to First Amendment claims); Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (assuming, without deciding, because the parties had not raised the issue, that a First Amendment free-exercise claim is actionable under Bivens). Nor has the Court of Appeals for the Third Circuit ever extended Bivens to First Amendment "free exercise" claims. But see Milhouse v. Carlson, 652 F.2d 371 (3d Cir. 1981) (deciding, before Malesko, to extend Bivens to a First Amendment "access to courts" claim); Paton v. La Prade, 524 F.2d 862, 869-70 (3d Cir. 1975) (deciding, before Malesko, to extend Bivens to a claim of violation of the First Amendment rights to free speech and association). In any event, this Court need not decide the issue because, as discussed more fully, below, Plaintiff has failed to state a claim for violation of his "free exercise" rights.

## IV. ANALYSIS

### A. Claims Against the United States and the Bureau of Prisons

As noted above, Plaintiff seeks to proceed against the United States and the Bureau of Prisons for failure to train and supervise Officer Sassaman.[5]

[5] It is not clear whether Plaintiff also seeks to proceed against the United States and the Bureau of Prisons on the theory that they are vicariously liable for the alleged constitutional violations by Officer Sassaman. To the extent Plaintiff seeks

The United States has sovereign immunity except where it consents to be sued. U.S. v. Bormes, 133 S.Ct. 12, 16 (2012); United States v. Mitchell, 463 U.S. 206, 212 (1983). In the absence of such a waiver of immunity, Plaintiff cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, see FDIC v. Meyer, 510 U.S. 471, 484-87 (1994), cited in Anselma Crossing, L.P. v. U.S. Postal Service, 637 F.3d 238, 240 (3d Cir. 2011), or against Officer Sassaman in his official capacity, see Kentucky v. Graham, 473 U.S. 159, 166 (1985) (noting that a suit against a government officer in his or her official capacity is a suit against the government).[6]

At any rate, however, Plaintiff has failed to plead facts

---

to proceed on such a theory, he fails to state a claim. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (holding that supervisors in Bivens actions may not be held liable on a theory of vicarious liability for the constitutional violations of their subordinates); Bistrian v. Levi. 696 F.3d 352, 366 (3d Cir. 2012) (same).

[6] The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., constitutes a limited waiver of the sovereign immunity of the United States. 28 U.S.C. § 2679(b)(1); White-Squire v. U.S. Postal Service, 592 F.3d 453, 456 (3d Cir. 2010). Assuming that an FTCA claim would otherwise be viable, a district court nevertheless lacks jurisdiction over an FTCA claim until the claimant has exhausted administrative remedies. See McNeil v. United States, 508 U.S. 106 (1993); 28 U.S.C. § 2675(a). Here, Plaintiff has failed to plead any facts demonstrating that he has exhausted his administrative remedies under the FTCA.

demonstrating that the United States or the Bureau of Prisons bear any liability for a failure to train or supervise Officer Sassaman. The Court of Appeals for the Third Circuit historically has recognized two theories of supervisory liability applicable to civil rights actions.

> Individual Defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989). ...
>
> The second theory of liability provides that a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. See Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 586 (3d Cir. 2004).[7]

As the Supreme Court has noted, in civil rights actions, the concept of supervisory liability is not to be equated with a supervisor's vicarious liability for the misdeeds of

---

[7] "'[S]upervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking. For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant." Sample v. Diecks, 885 F.2d 1099, 1116 (3d Cir. 1989), quoted in Rushing v. Apgar, Civil No. 13-1103, 2013 WL 5435785, *4, n.5 (D.Del. Sept. 27, 2013).

subordinates.

> In a § 1983 suit or a Bivens action -- where masters do not answer for the torts of their servants -- the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.

Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009).

After Iqbal, the Court of Appeals has recently expressed uncertainty as to the viability and scope of supervisory liability. See, e.g., Arqueta v. United States Immigration and Customs Enforcement, 643 F.3d 60, 70 (3d Cir. 2011); Santiago v. Warminster Twp., 629 F.3d 121, 130 n.8 (3d Cir. 2010); Bayer v. Monroe Cnty. Children & Youth Servs., 577 F.3d 186, 190 n.5 (3d Cir. 2009). This uncertainty need not concern this Court in this action, however, as Plaintiff alleges no facts that show a basis for imposing liability for failure to supervise even under the Third Circuit standard that pre-dates Iqbal.

As discussed more fully below, Plaintiff has failed to plead facts demonstrating that Officer Sassaman violated his constitutional rights. In the absence of such a constitutional violation, there can be no liability on the part of his supervisors for failure to train or supervise. See, e.g., Reiff v. Marks, 511 F.App'x 220, 223 (3d Cir. 2013) (collecting cases).

B. The First Amendment Claim Against Officer Sassaman

The First Amendment to the U.S. Constitution provides, inter alia, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ... ." U.S. Const. amend I. To state a claim for violation of the Free Exercise Clause, Plaintiff must allege facts demonstrating that the "government has placed a substantial burden on the observation of a central religious belief or practice" and that no "compelling governmental interest justifies the burden." Hernandez v. Comm'r of Internal Revenue, 490 U.S. 680, 699 (1989), cited in Torres v. Davis, 506 F.App'x 98, 101 (3d Cir. 2012). To establish a "substantial burden," Plaintiff must allege facts demonstrating government action "that is either compulsory or coercive in nature." Anspach ex rel. Anspach v. City of Philadelphia, Dept. of Public Health, 503 F.3d 256, 272 (3d Cir. 2007) (citations omitted).

Where a prison regulation or practice impinges on a prisoner's constitutional right, the regulation or practice is valid if it is "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987), cited in DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000). In Turner, the Supreme Court set forth a four-factor analysis to assess the overall reasonableness of such regulations and practices. 482 U.S. at 89-91. The reasonableness standard involves the examination of the following four factors: (1) whether the

regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at de minimis cost to valid penological interests. Thornburgh v. Abbott, 490 U.S. 401, 415-18 (1989); Turner, 482 U.S. at 89-91. However, prison administrators need not choose the least restrictive means possible in trying to further legitimate penological interests. Thornburgh, 490 U.S. at 411.

"Of course, the Turner analysis is appropriate only in cases where a prison policy is impinging on inmates' constitutional rights. Turner, thus, assumes as a predicate that the plaintiff inmate has demonstrated that a constitutionally protected interest is at stake." DeHart, 227 F.3d at 51.

Here, assuming that Plaintiff found the challenged pat-down search to be offensive, it can in no way be construed as having compelled Plaintiff to violate a religious tenet against homosexuality. Plaintiff was not forced to engage in any homosexual acts. Moreover, there is nothing beyond Plaintiff's

self-serving characterization of the search technique to suggest that it included any inappropriate sexual contact. Plaintiff does not suggest that Officer Sassaman made any sexual comments or threats during the search or at any other time. In addition, the contact could not have lasted more than a few seconds, as Plaintiff admits that he immediately struck Officer Sassaman's hand away. At any rate, considering the Turner criteria, a pat-down search that includes the groin area, conducted on a prisoner finishing a work shift in the kitchen, is a quintessentially rational and minimally-intrusive approach to ensuring that dangerous contraband is not introduced from the kitchen area to the general population.

This claim will be dismissed with prejudice for failure to state a claim. See Hill v. Blum, 916 F.Supp. 470, 472-73 (E.D. Pa. 1996) (noting that "[a] pat search of an inmate who has concluded duty in the kitchen is obviously a prudent step in the direction of prison safety," and granting summary judgment, on First Amendment free-exercise claim, to guard who allegedly "cupped" the prisoner's genitals and "squeezed them ... fairly hard" during pat-down search).

C. The Fourth Amendment Claim Against Officer Sassaman

The Fourth Amendment to the U.S. Constitution provides, in pertinent part, that "[t]he right of the people to be secure in their persons ... against unreasonable searches ... shall not be

violated."

"[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness,'" Missouri v. McNeely, 2013 WL 16285934, *15 (2013) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)), which "is measured in objective terms by examining the totality of the circumstances," Ohio v. Robinette, 519 U.S. 33, 38 (1996) (quoting Florida v. Jimeno, 500 U.S. 248, 250 (1991)). "Whether a search is reasonable 'is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" Samson v. California, 547 U.S. 843, 858 (2006) (quoting United States v. Knights, 534 U.S. 112, 118-19 (2001)).

The Supreme Court has emphasized that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities," Florence v. Board of Chosen Freeholders of the County of Burlington, 132 S.Ct. 1510, 1517 (2012) (citation omitted), and that "[t]he task of determining whether a policy is reasonably related to legitimate security interests is 'peculiarly within the province and professional expertise of corrections officials,'" id. (citation omitted). "[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these

considerations courts should ordinarily defer to their expert judgment in such matters." Block v. Rutherford, 468 U.S. 576, 584-85 (1983) (citations omitted), quoted in Florence, 132 S.Ct. at 1517 (upholding jail policies requiring every new detainee who will be admitted to the general population to undergo a close visual inspection while undressed, including requirements that the detainees lift their genitals for inspection or cough in a squatting position).

Where a contact search is conducted in a purposefully sexually-degrading manner, however, the search may not be reasonable or constitutional. See, Watson v. Secretary of Pennsylvania Dept. of Corrections, 436 F.App'x 131, 136 (3d Cir. 2011). Nevertheless, several courts have upheld the constitutionality of pat-down searches, through clothing, that involve touching of the groin area. See, e.g., Bradley v. U.S., 299 F.3d 197 (3d Cir. 2002) (upholding pat-down search by female customs inspector, of female passenger at customs checkpoint, where inspector allegedly used her fingers to inappropriately push on passenger's breasts and into the inner and outer labia through the passenger's dress); Grummett v. Rushen, 779 F.2d 491, 495 (9th Cir. 1985) (upholding pat-down searches, through clothing, by guards of the opposite sex from the prisoners); Watson v. Beard, Civil No. 09-087J, 2013 WL 4648323, *9-*10 (W.D. Pa. Aug. 28, 2013), aff'd on other grounds, 558 F.App'x

141 (3d Cir. 2014) (upholding pat-down search, through clothing, that included the groin area).

Similarly, in upholding the constitutionality of a strip-search under both the Fourth and Eighth Amendments, one court noted that:

> Plaintiff avers that during the search, [the officer] 'grabbed' and 'tugged' plaintiff's penis and testicles ... . I cannot conclude that the search, even as plaintiff describes it, was so abusive or excessive that it violated the Constitution. Any manual search of an individual's body will require some amount of manipulation of the genitals in order to accomplish the purpose of the search. Although 'grabbing' and 'tugging' could cause some discomfort and embarrassment, it does not rise to the level of 'unnecessary and wanton infliction of pain' so long as it occurs as part of an otherwise justified search.

Cherry v. Frank, Civil No. 03-0129, 2003 WL 23205817, *12 (W.D. Wis. Dec. 4, 2003).

Here, Plaintiff does not contend that there was no penological justification for search, and, as noted in the cases cited above, it can hardly be contested that there is generally good cause to search prisoners finishing a shift in the kitchen, as Plaintiff was. Accordingly, the mere fact that Officer Sassaman may have cupped or manipulated Plaintiff's genitals in the context of a pat-down search is not sufficient, in itself, to establish a Fourth Amendment violation. This claim will be dismissed with prejudice.

D. The Eighth Amendment Claim Against Officer Sassaman

The Eighth Amendment to the U.S. Constitution prohibits the government from inflicting "cruel and unusual punishment" on those convicted of crimes. An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the official acted with a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component is contextual and responsive to "'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S 1, 8 (1992) (citation omitted). The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson, 501 U.S. at 297) (internal quotation marks, emphasis, and citations omitted)); Rhodes v. Chapman, 452 U.S. 337, 345 (1991). What is necessary to establish an unnecessary and wanton infliction of pain varies according to the nature of the alleged constitutional violation. Hudson v. McMillian, 503 U.S. at 5. See generally Allah v. Ricci, 532 F.App'x 48, 50-51 (3d Cir. 2013) (citing Farmer, Hudson, Wilson, and Rhodes).

"While severe or repetitive sexual abuse of an inmate by a prison official can violate the Eighth Amendment, isolated incidents of inappropriate conduct by prison officials generally do not infringe upon an inmate's constitutional rights."

Williams v. Silverman, Civil No. 12-0974, 2013 WL 6578980, *4 (E.D. Pa. Dec. 16, 2013) (collecting cases) (dismissing with prejudice claim alleging one instance of inappropriate touching during a pat-down search). See also Hughes v. Smith, 237 F.App'x 756, 759 (3d Cir. 2007) (affirming dismissal of Eighth Amendment claim challenging a single pat-down search in which the officer allegedly touched a prisoner's testicles through his clothing without making any sexual comments); Watson v. Beard, Civil No. 09-087J, 2013 WL 4648323, *9-*10 (W.D. Pa. Aug. 28, 2013) (collecting cases), aff'd on other grounds, 558 F.App'x 141 (3d Cir. 2014).

Here, while Plaintiff may have found the search offensive, nothing about the circumstances as described by Plaintiff rises to the level of an Eighth Amendment violation. Plaintiff complains of only one incident and does not allege that the search was physically painful or was accompanied by sexual comments. This claim will be dismissed with prejudice.

E. The Request for Injunctive Relief

Plaintiff seeks injunctive relief in the form of an order precluding the United States, the Bureau of Prisons, and all Bureau of Prisons employees from retaliating against him for bringing this lawsuit, including through retaliatory transfers, lockups, or other forms of harassment.

Injunctive relief is an "extraordinary remedy, which should

be granted only in limited circumstances." Novartis Consumer Health v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002) (quotation and citation omitted). Here, Plaintiff lacks standing to pursue his claim for prospective injunctive relief.

The doctrine of standing requires a plaintiff to satisfy both the Article III constitutional minimum of a "case or controversy" and any prudential considerations set by the courts. See Clark v. Burger King Corp., 255 F.Supp.2d 334 (D.N.J. 2003). To satisfy Article III standing, a plaintiff must demonstrate (1) that he has suffered an injury in fact that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of, that the injury has to be fairly traceable to the defendant's challenged action; and (3) it must be likely as opposed to merely speculative, that the injury will be redressed by a favorable decision. See Lujan v. Defenders of Wildlife , 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). "Since [the elements of standing] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." Lujan, 504 U.S. at 561.

To obtain prospective injunctive relief, a plaintiff must

demonstrate a "real and immediate threat" of future injury in order to satisfy the "injury in fact" requirement. City of Los Angeles v. Lyons , 461 U.S. 95, 103-04 (1983). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." Brown v. Fauver, 819 F.2d 395, 400 (3d Cir. 1987).

Here, Plaintiff has not established that his constitutional rights have been, or are likely to be, violated. To the contrary, he has failed to state a claim for violation of any constitutional right. Moreover, Plaintiff has failed to allege any facts suggesting that he is subject to a “real and immediate threat” of retaliation for filing this lawsuit. The request for prospective injunctive relief will be denied.

## V. CONCLUSION

For the reasons set forth above, the Complaint will be dismissed without prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e, for failure to state a claim. It does not appear that Plaintiff can amend the Complaint to cure the deficiencies noted.

An appropriate order follows.

At Camden, New Jersey

s/Noel L. Hillman
Noel L. Hillman
United States District Judge

Dated: July 17, 2014